BELMONT.
November 1818

Peairs
*v.*
Harrah.

---

## PEAIRS vs. HARRAH.

It is not actionable to say to the plaintiff, in reference to a proceeding before a "Session," "I told the session, that I thought that Jeremiah Peairs forged Andrew Thompson's name to the paper he gave the Session, and Peairs is a meddling old rascal," such paper not being "an authentic matter of a public nature."

"State of Ohio, Belmont County, ss.—Court of Com. Pleas, July term, 1818.—Jeremiah Peairs complains of Alexander Harrah, in a plea of the case, that, whereas he the said Jeremiah, is, a good, true, faithful and honest citizen of this state, and as such, has always hitherto lived and conducted himself, so that he had deservedly obtained the, good opinion of all his neighbours; and never, until the speaking and publishing the false, scandalous, malicious, and defamatory words herein after mentioned, was accused or suspected of forgery, or any such hateful crime—yet the said Alexander Harrah, well knowing the premises, but greatly envying the happy state and condition of the said Jeremiah, and maliciously contriving the said Jeremiah, in this respect, to defame and injure, on the 17th day of June, Anno Domini 1818, at the County of Belmont aforesaid, in a certain conversation which he then and there had with divers good citizens of this State, of and concerning a certain proceeding before that time had before the Session of the Rev. —— Taggart's congregation, wherein complaint was made to the said Session, by the said Jeremiah, against the said Alexander, and of and concerning a certain paper produced by the said Jeremiah before said Session, being a certificate made by Andrew Thompson, concerning the conduct of said Alexander, in which said conversation, he, the said Alexander, falsely, maliciously, and with a loud voice, did utter and publish these following false, scandalous, malicious and defamatory words following, of and concerning the said Jeremiah, to wit: "I," (meaning himself the said Alexander) "told the Session" (meaning the Session aforesaid) "that I" (again meaning himself the said Alexander) "thought

BELMONT.
November 1818

Peairs
v.
Harrah.

that Jeremiah Peairs" (meaning the Pl't'ff.) "forged Andrew Thompson's name to the paper" (meaning the certificate aforesaid) "that he gave the Session, and Peairs" (again meaning the Pl't'ff.) "is a meddling old rascal"—thereby meaning that the said Peairs had forged Andrew Thompson's signature to the certificate aforesaid.   By reason of the speaking and publishing of which said false, scandalous, defamatory and malicious words, he, the said Jeremiah, is greatly injured in his good name, fame and reputation, and hath sustained damages —— dollars, wherefore he brings suit," &c.   HAMMOND, Att'y. for Pltff WRIGHT, Att'y. for defendant.

PLEA, "not guilty"—verdict guilty—reasons in arrest.

1. Words not actionable.

2. The words impute no crime to plaintiff, *nor the possession of any contagious disease.*

3. The declaration is in other respects insufficient.

HAMMOND for plaintiff, said: "This is an action for words, in which, after verdict for the plaintiff upon the plea of not guilty, the defendant moves in arrest of judgment, upon the ground that the words are not actionable, neither imputing the commission of any crime or the possession of any contagious disease to the plaintiff.

The words charged are as follows—"I told the session that I thought that Jeremiah Peairs forged Andrew Thompson's name to the paper he gave the session, and Peairs is a meddling old rascal."   It is alleged that these words were spoken concerning a proceeding before the session of Mr. Tagart's congregation upon a complaint made by Peairs against Harrah and concerning a certificate made by Andrew Thompson and produced by Peairs before the session, as evidence of the conduct of Harrah.

It would seem from the exception taken that the defendant contends that no words are actionable unless they impute some crime to the party accused, or unless they impute to him a contagious disease. In this case the latter is not pretended, I shall therefore confine myself to the first branch of the exception.

Words are not actionable unless they charge the party with the commission of some crime.   This is, I admit, the general doctrine: But 'tis not universally true, and I maintain that it is not founded in good sense; and as an evidence of this I may refer to the various contradictory dictums and decisions upon the subject, which shew that although the judges have felt themselves shackled by precedents, they

have been disposed to struggle for exceptions to sustain doctrines more conformable to justice and the feelings of mankind.

.In deciding that an action lay for accusing a woman of being unchaste, the supreme court of this state have overruled this doctrine, in a case where every man feels and acknowledges the justice of the decision. There are a vast variety of cases in which men may be accused of deeds calculated to blast their reputations forever, which are nevertheless not made criminal by the laws of the land. A man is accused of false swearing—it may be that the oath was extra-judicial, and taken under circumstances in which he could not commit legal perjury. But the moral turpitude is not therefore the less, and although the party could not be subjected to punishment, the stigma attaches as deeply to his reputation, as if he were actually convicted of the charge.

Our constitution gives every individual a right to come into a court of justice and *demand* redress for an *injury* done him in his reputation. The courts are to decide what constitutes an *injury* to reputation. In making up a judgment upon the question, I conceive that special regard should be had to the present state of society; to the habits, feelings and morals of the community.

As a plain matter of fact, is it true that a man can only be *injured in his reputation,* by accusing him of the commission of some crime, which subjects him to infamous punishment? This, as a practical fact, will not, I presume be maintained. What then is the foundation of this doctrine, so wholly artificial in its application to our condition at this day? It may be said that this *is* the doctrine of the common law. It *was* the doctrine of the common law in early and barbarous times, when the moral feelings and perceptions of civilized man were totally different from what they now are. It is a doctrine quite consistent with a state of lordship and vassalage, where violence and outrage were only regarded as disgraceful when attended by punishment. In those days reputation did not consist in conforming to the maxims of justice and practising the moral virtues; it was chiefly made up of a fierce and haughty spirit of independence, exemption from restraint and impunity of conduct. Immorality, violence and injustice were very partially contemned, unless some punishment attended the commission of them; but indelible disgrace was attached to infamous punishment. In this state of society it was natural that the old doctrine respecting actionable words, should be built up. It

BELMONT.
November 1818

Peairs
v.
Harrah.

was in strict consonance with the maxims of the common law, which I maintain consists of principles of equity and justice, conforming to the state of society in which they are to be applied.

It was the ancient doctrine of the English courts, that defamatory words were to be taken *in mitiori sensu*—the feelings of the people were averse to actions for words—a more summary method of avenging defamation was preferred, and of consequence maxims prevailed discountenancing this kind of action. But as the people assumed a milder and more civilized character, the judges began to view this action in a different light, and shew it more favour. The doctrine that an innocent meaning should be put upon words, if by any distortion,.it could be done, was exploded. And more than a century ago, the court, in a particular case, decided that words "*will be actionable if they charge men with evil inclinations and principles.*" Ld. Ray. 813. This decision is quoted by Judge Pendleton in the case of Hoyle vs. Young, 1 Wash. 150. And I think the argument of Judge Pendleton a correct and just one. That was a motion in arrest after verdict; the words were alleged to be spoken of a merchant, but no colloquim was laid. The jury found for the plff. and although the words were only actionable as spoken of a merchant, the court disregarded the want of a colloquium held by Espinasse, Chitty and others to be indispensable. The reason given is, that the words were laid to be spoken maliciously, and were so found by the jury. After which the judge says " it would be highly improper to set aside the verdict." Indeed courts do not favour motions in arrest, and for very good reason : the defendant should at first demur, and not give the party, jury and witnesses, unnecessary trouble. If he chooses to take a double chance of escape, it is but fair that he should incur the risk of having his ground weakened after verdict—6th Johnston 82, and 7th Johnston 360, are strong to this point ; which, though not strictly in order here, is now mentioned because connected with the case from Washington.

Let it be admitted, that to fabricate a certificate in the name of another person, is not forgery either at common law or under our statute ; yet, to do so, would be an act of great moral turpitude. Would not the party guilty of such an act, be liable to indictment at common law, not for forgery, but for a misdemeanor ? If he would, and I think there can be little doubt of it, in the minds of those who regard the common law as in force, then the case is within the principle laid down by the supreme court of New York, 5th Johnston, 191, which

is that "in case the charge, if true, will subject the
party charged to an indictment for a crime involving moral turpitude, or subject him to an infamous punishment, then the words will be in themselves actionable." I do not cite this case because I respect the decision upon the principal point. It is at variance with the decision of our own supreme court, upon the same question; and it is, in my opinion, repugnant to good sense, and in violation of all our best feelings. If warranted by precedent, it is properly a specimen of technical absurdity, from the shackles of which I humbly conceive an American judge can easily disentangle himself, without prejudice to authority or principle, and without the slightest danger of mischievous innovation.

But I do not conceive that our case stands upon this reasoning. I maintain that the fact charged against Peairs is forgery under our statute. The person who shall falsely make, alter, forge or counterfeit any record *or other authentic matter of a public nature*, with intent *to injure* any other person, is made guilty of forgery by the statute.— The first class of forgeries enumerated by the act, is that here noted. It was utterly vain to attempt an enumeration of every specific case, in which forgeries might be committed, in connection with the operations of the government, and the administration of justice; the act, therefore, provides, that to fabricate or counterfeit any *authentic matter* of a public nature, should be forgery; evidently intending to embrace in these terms every case that might occur. Thus, to forge the certificate of a justice of the peace, or the seal and certificate of a clerk, would be a forgery of an authentic matter of a public nature— so to forge an affidavit or deposition, in a cause pending in court, with intent to use such document, would be forgery within the statute.— All judicial proceedings are public; and every legal document exhibited before a judicial tribunal, is of a public nature. I do not suppose this interpretation of the statute will be controverted.

The laws of the country recognize the proceedings of the ecclesiastical courts, and hold that the parties are concluded by their decisions. If, in a question of property. the parties submit to the decision of the meeting, session, or whatever name the ecclesiastical tribunal be distinguished by, and such tribunal decide between them, the courts of the country would recognize the force of the decision. In such case, should the meeting or session decide, that A. owed B. 100 dollars, if the decision was made according to the rules of the meeting or session, and if the parties were properly before the tribunal, the court, in

BELMONT.
November 1818

Peairs
v.
Harrah.

an action of debt, or assumpsit, would not permit the justice or force of the decision to be questioned.—If these positions be correct, it would seem to follow, that the proceedings of such courts or tribunals, are authentic matters of a public nature; and to fabricate, alter or counterfeit them, would be forgery.

A colloquium is charged in this case, of and concerning a certain proceeding had before the session of Mr. Tagart's congregation, wherein complaint was made by the plaintiff against the defendant—and of and concerning a paper produced by the plaintiff before that session, being a certificate made by Andrew Thompson concerning the conduct of the defendant—and in reference to this proceeding and certificate it is charged that the defendant accused the plaintiff of forging the name of Andrew Thompson.

By his plea of not guilty the defendant put all these allegations in issue. That there was any such proceeding before the session; that such paper was produced, that it was a document of any use or authority, were all facts which the plaintiff might be required to prove, and of the existence of which the jury must be satisfied before the plaintiff's case could be made out. Upon this motion it must be taken as a fact really is, that these matters were all made out in proof. The jury have found that such proceeding was duly instituted before the session, that the certificate of Andrew Thompson was produced, that this certificate was relevant to the complaint and proper evidence before the session, and that the defendant accused the plaintiff of forging the name of Andrew Thompson to that certificate. Now take it to be established, that Peairs was really guilty of fabricating such a certificate and of forging the name of Andrew Thompson, as asserting or certifying facts, impeach the good conduct of Harrah before the session, would not such an act be the forging an authentic matter of a public nature, within the meaning of the act? If it would not, no person can be punished for forging any document connected with the administration of justice. Why a Legislative provision intended to punish such variety of offences, should be narrowed by a construction limiting the obvious import of the terms used, is to my mind incomprehensible? Had Peairs been indicted for a forgery of the name of Andrew Thompson, under the circumstances stated, and found guilty by a jury, I do not see upon what safe principle the court, upon motion in arrest, could turn him loose upon society. To deny to the session the judicial character I contend for, would be an innovation upon received doctrine.

To deny that a forgery could be committed, of a document receivable by such tribunal as evidence, would be either making an invidious and unjust distinction between ecclesiastical and other tribunals, or it would be deciding that no forgery can in any case be committed of any documents to be used in, or constituting part of the procedings of a court of justice.

This action is, therefore, sustainable, as the words spoken charge the plaintiff with evil principles and conduct, as they charge him with a crime involving moral turpitude, for which he may be indicted at common law; and as they charge him with an offence that subjects him to infamous punishment.

WRIGHT, for defendant:—"When the motion in arrest was filed here, I did not intend to submit any observations in support of it. I had tho't the causes in arrest, would have satisfied the plaintiff's counsel on reflection, without the trouble of an argument, and after the late decision in this court, in the case of Barret vs. Jarvis, which was affirmed in the last Supreme court, on a writ of error brought by the gentleman himself, and a like decision in this court in the case of Riddle vs. Patterson : but in this, I have been mistaken, and counsel have submitted an elaborate argument in support of the motion. Most of this argument, might, with more propriety, have been addressed to a legislative body, having power to amend the law, than to a Court like this, empowered only to ascertain what the law is, and to apply it to cases that occur.

It is claimed to support this action on the ground that the words set forth in the declaration, are actionable of themselves, inasmuch as they impute the commission of crime, &c. although it is contended in one part of the argument, and attempted to be supported by authority, that a charge of evil inclination, would support an action. I had not expected at this day to hear such doctrine advanced in a Court of Justice. To make words actionable of themselves, I concieve they must directly and unequivocally charge the commission of some crime, involving moral turpitude, which if true, would subject the accused to indictment and infamous punishment. Hard. 203, Cro. Jac. 144, Cro. Eliz. 502, Salk. 696, 1 Caines 348, second edition and note a, 3d Caines 73, 1 John. 505, 32 John 10, 5th John. 191, 2d Dal. 58, 1st Bin. 537. I would cite also the case of Barrett vs. Jarvis above mentioned, and also Riddle vs. Patterson. But words of the character above cease, to be actionable, if spoken in a way, or of a subject, in or upon which the crime supposed to be imputed could not be committed,

BELMONT.
November 1818

Peairs
v.
Harrah.

as to say "he is a murderer, for he killed my horse," "he is a thief, for he stole my trees," &c. because the words carry their own refutation with them. 3d Wils. 177, 6th T. Rep. 794, Peake N. P. 6, 218, 4th Rep. 16, Cro. Jac. 114, 9th East. 96, 1 Camp. 48, 1st John Cas. 279, 330, Esp. Rep. 32, 3d Lev. 166, 3d Esp. Rep. 32, 165, 3d John. 180, 7th John 357. And words are not actionable which merely report a proceeding had before a court, whether of a competent jurisdiction or not. 1st Esp. Rep. 456, 1 Saund. 132, 2d Lut. 1571. To the case cited from Lord Raymond 813, I shall only observe, that it is not considered law, 4th Esp. Rep. 218, 8th John. 77, 9th East. 93. True that case was adverted to by Judge Pendleton in Hoyle vs. Young, 1st Wash. Rep. 150, yet the question decided in Virginia, does not touch the decision quoted from Lord Raymond. In the Virginia case, the matter was brought before the court on appeal, not in arrest, but so far as it regards the question now under consideration, viewed in the same light as a motion of arrest. In that case the words were not pretended to be actionable of *themselves*, but claimed to be made so, because they were spoken of a *merchant :* the question was, whether it appeared in the declaration that the words were spoken of the plaintiff, in his *character as a merchant*, and that is the point decided by the court, upon which they gave judgment for the plaintiff. It is a little singular, that counsel should have overlooked the language of the court in the opinion reported.—" In the present case, (say the court) the words laid "in the declaration clearly import a charge against the [plaintiff] in "his mercantile character. The declaration states him to be a "merchant, and the whole of it taken together, shows that the words "were spoken of him *as such.*"

In the case at bar, if the words contained in the declaration make an unequivocal charge of forging the paper referred to, it will be for consideration, whether *forgery* could be committed by fabricating such an instrument. Forgery, at the common law, is " the false making or altering an instrument of writing to the prejudice of another person's right." Our statute enumerates a variety of instruments of writing, the false making or altering of which, is forgery ; and from the enumerated cases the plaintiff has selected out, as embracing the case in the declaration, the making, &c. of " any *record* or *other* authentic "matter of a *public nature*, with intent to *injure* any other person," &c. It is not the false making or altering of *every* writing that subjects a person to punishment for forgery, but such only as are

enumerated in the statute, or are known to the rules of the common law; and I can see no difference between the received construction of the common law definition and the statutory definition. The case under consideration, presents a declaration in which it is alleged that a conversation was had by deft. Harrah of the plaintiff Peairs, and a *certain proceeding* had before the session of the Rev. Mr. Taggart's congregation, wherein complaint was made by the said Peairs against the said Harrah, and of a certain paper *produced* by said Peairs before said session, being a *certificate* made by one Andrew Thompson *concerning the conduct* of the said Harah, in which conversation the said Harrah spoke of the said Peairs, these words, " *I told the session* " *that I thought that Jeremiah Peairs forged Andrew Thompson's* " *name to the paper that he gave the session, and Peairs is a meddling* " *old rascal.*" Could forgery be committed by signing another person's name to such a certificate ? It is not a record—not a paper appertaining to a proceeding in a Court of justice—not an obligation or evidence of debt or claim; nor is it calculated to *injure* Thompson, Harrah, or any other person in a legal sense. It cannot subject to the loss of property, liberty, or any civil right. But it is said it is an *authentic matter* of a *public nature !* whence arises its *authenticity ?* It is made by Andrew Thompson, *concerning the conduct* of Harrah, and was *produced* by Peairs *before a session.* Who is Thompson, that his bare certificate of unknown contents, should be received as an *authentic matter* of a *public nature,* assimilating in character so near to a record, as to require the especial regard of the legislature, and to be coupled in the same sentence with records, taking precedence of charters, letters patent, deeds, wills, &c. which dispose of our persons and property, and the soil we tread on ? Is he a public officer authorised and empowered by law, to authenticate any matters relating to the public ? No such thing is pretended. Is it the deposition, or certificate on *honor*, of an individual, called for by a Court of civil, military, or ecclesiastical jurisdiction, according to its rules of proceeding ? Not even that. What then is it ? A thing unknown in law—of unknown contents and character, and use, procured by a malignant man, concerning the conduct of his neighbor, and produced before Mr. Taggart's session : But whether there produced as *evidence* in a matter then pending, or exhibited as a curious bauble, we cannot ascertain from the declaration. Why call it *authentic* and give it a *public nature ?* It had no authentic character or public nature at its

BELMONT.
November 1818

Peairs
*v.*
Harrah.

BELMONT.
November 1818

Peairs
v.
Harrah.

inception or creation. Does the *production* of it by Peairs to the session, give it the one or the other? Assuredly the gentleman for the plaintiff cannot have reflected on this subject, or he is not serious. But suppose it admitted, that the certificate was procured according to the rules of the session, in a matter pending before it, to be used as evidence; have the proceedings, minutes and papers, of a religious tribunal for the discipline of their members, and management of their own concerns, the verity of records and matters of a public nature, in which the community has so deep an interest as to punish their fabrication by imprisonment in the penitentiary at hard labor for any period of time not more than twenty years nor less than two years? I cannot believe it. It is said the law "recognises the proceedings of ecclesiastical courts, and holds that the parties are concluded by their decisions." But how recognise them?—Where is the recognising act? If A and B, members of the same society, whether religious or of other character, have a difference about a matter within the rules of the society, and agree to submit the determination of such dispute to the society, I am not disposed to question that their decision might be viewed in the light of an award of arbitrators chosen by the parties, but no further countenance could be given them. The law knows no difference in this respect, between a religious, moral or political society; and with precisely as much legal truth might it be urged that the proceedings, decisions, and papers of a Freemason's, Washington Benevolent, Tammany, Agricultural, or Banking Society, would attain the character of "Records and authentic documents of a public nature," as of the society in question.

The Constitution is relied upon as securing the plaintiff's cause of action. The 7th section of the 8th article declares " that all courts " shall be open, and every person for an injury done him in his lands, " goods, person or reputation, shall have remedy by the due course of "law," &c. This establishes no new principle, it only *declares* an existing right, inherent in freemen protected by a government of laws, " shall have remedy by the due course of law "—would it be in due course of law, to sustain an action of slander for mere opprobrious words imputing no crime, as the calling a man a liar, &c.? It would seem to me to be innovating upon settled principles, rather than giving remedy in the due administration of them. Admitting that, to fabricate the certificate in question, would not be forgery; yet it is contended it would be an indictable offence at common law for a

misdemeanor, and therefore the charge will sustain an
action. Will the charge of everything for which a person
may be indicted at common law, subject to an action of
slander? A man may be indicted for an assault and
battery, for riot, libel, maiming, extortion, assumption of authority,
destroying tombstones, altering marks and brands, and a great
many other things, and punished by fine and imprisonment, and
yet no man ever thought of bringing an action of slander for a charge
of having done either of those acts, and many of them suppose the
presence of as much moral turpitude, in their commission, as the
making the certificate.

BELMONT.<br>
November 1818<br>
Peairs<br>
<i>v.</i><br>
Harrah.

As if to leave no possible doubt on the subject of forgery, justly
considered one of the most henious crimes, our Legislature have pro-
vided in the 21st Sec. of the "act for the punishment of certain
"offences therein specified" "that if any person shall maliciously
"write any letter or *other writing*, and subscribe thereto the name of
"any other person, and in any way cause such letter or other writing
"to be made public for the purpose of subjecting the person whose
"name shall be affixed, to prosecution, &c. of any offence by the laws
"of this state punished by *death* or imprisonment, every person so
"offending &c. shall be fined in a sum not *exceeding five hundred
dollars* and imprisoned not more than six months."—The forging a
letter to subject a man to *ecclesiastical censure*, according to Mr. Ham-
mond's notion, is forgery, and punished by imprisonment in the
penitentiary for 20 years at hard labor; while the forging a letter to
subject a man to prosecutions for an offence (and perhaps consequent
conviction) punishable with *death,* is only punished by imprisonment
in the county jail for *six months,* without even requiring the prisoner
to labor! The proposition of the gentleman is the more singular, as
it is said both the laws were from his own pen.

Good policy and the state of society at this day, is supposed to
require a relaxation of the governing rules in the action of slander. I
think otherwise. The action is now resorted to more to gratify a
revengeful spirit than to obtain redress for a real injury to reputation.
Should the means of gratifying that spirit be multiplied? Something
more than I have yet heard, must be adduced to satisfy me of it. If I
were to consult the interest of my professional brethren, I should
advocate the gentleman's doctrine in the full expectation of multiply-
ing that kind of suit in a ten fold ratio; but if I turned my attention
to the good of society, I should be compelled to oppose it. The

BELMONT.
November 1818

Peairs
v.
Harrah.

legislature of Virginia have thought proper to give an action of slander for opprobrious and provoking words, not imputing crime and not actionable at the common law, *in order to prevent duelling*. Our Legislature have not yet thought proper to follow the example; and it is fortunate for us, that we are not so much disgraced with the detestable practice of duelling as to require the innovation.

It appears to me clearly established, that the charge contained in the slander complained of, imputes no crime ; the moral turpitude, as has been decided in the case of Riddle vs. Patterson, of an oath taken to abide the award of arbitrators, is not sufficient to sustain an action. Yet there is one more view of the case which may be taken ; the words contain no charge of ever having forged the paper. The language used shows that such was not Harrah's intention. "I told the Session that he forged the paper, and Peairs is a meddling old rascal." Harrah relates what took place at the Session, and then charges Peairs with being a meddling old rascal. The law authorises the relation of what takes place in a Judicial proceeding—the charge of being a rascal, I cannot think Mr. Hammond would call actionable. The words are undoubtedly highly indecorous and impolite, which the rules of good breeding will correct without the aid of a court of justice.

As to the finding of the jury, and the unfavourable eye with which courts look upon motions in arrest, I am disposed to give the gentleman the whole of his argument, observing however, that I do not stand here to solicit favours, nor do your honors occupy the bench to dispense them. The jury find only the affirmative of the allegations in the declaration ; their finding has nothing to do with the question before the court.

PRESIDENT.—The jury having returned a verdict for the plaintiff, have fixed upon the defendant the guilt of having uttered and published the defamatory words laid in the declaration, in manner and form as they are charged to have been spoken. The motion in arrest of judgment brings in question whether the words spoken by the defendant of the plaintiff are in contemplation of law slanderous ; nothing is considered as substantiated by a verdict, but such facts and circumstances as must of necessity have been proven to have induced such verdict ; it is not perceived that in this case more was necessary to be proven than is charged, to warrant the finding of the jury ; the case is not therefore rendered stronger for the plaintiff by the verdict ; the question then must be considered and decided on this motion, as

it must have been considered and decided had there been a general demurrer to the declaration.

It is the duty of the court to declare what the law is, and when that is settled, by an uniform course of decisions, not unreasonable in themselves and in no way incompatible with our political institutions, it would be departing from the duty of a court to become speculative jurists and substitute their own perhaps visionary theories for its settled principles. The action of slander has undergone several revolutions from the time when the plea of not guilty put the plaintiff's whole declaration in issue, and enabled the defendant as well to prove the truth as to controvert the speaking of the words charged, to the case of Underwood and Parks, in which it was decided by the judges, that the truth of the words should no longer be given in evidence to mitigate the damages; so that, it must be confessed, that if we were disposed to legislate on the subject before us, precedents of judicial legislation would not be wanting to support us. But the action of slander is not one which, for reasons of a moral or political nature, requires the indulgent aid of our courts for its encouragement and extension. It is generally brought to gratify the most malignant passions, or to shield, by legal penalties, a doubtful character from scrutiny; so that it may be reasonably questioned, whether the policy of the Atheneans, (the most polished people of ancient times) in not allowing an action for private defamation, was not more wise and salutary than our own.

This action is attempted to be supported, on the principle that the words spoken by the defendant charge the plaintiff with the crime of forgery. The defendant, in conversation concerning a certain proceeding before that time had before the session of the Rev. Mr. Taggart's congregation, wherein complaint was made to the said session by the plaintiff, against the defendant, and concerning a certain paper produced by the plaintiff before said session, being a certificate made by Andrew Thompson concerning the conduct of the dft. said: " I told the session that I thought that Jeremiah Peairs forged Andrew Thompson's name to the paper that he gave the session;" and we are asked to say that this certificate of Mr. Thompson, so produced to the sesion, was such an authentic matter of a public nature, as that forgery committed therein, would subject a person to indictment and punishment under the provisions of our statute. What was the session of the Rev. Mr. Taggart's congregation? Where was such session held? What were its powers, legal or conventional? What authority

BELMONT.
November 1818

Peairs
v.
Harrah.

had they to hear a complaint against the defendant? and what authority had Thompson to make an authentic certificate of a public nature, concerning any man's conduct or character? are questions to which the record furnishes no answer. We are not to presume a jurisdiction where none is claimed. We know not that Mr. Taggart's congregation is an ecclesiastical tribunal, or that the parties to this action were in any way connected with it. To have held cognizance of the plaintiff's complaint, either the law or the act of the parties must have given the session jurisdiction. They do not appear to have derived it from either source. But were it to be admitted, that the session was an ecclesiastical court, competent to hear and determine the subject matter of the plaintiff's complaint (whatever it may have been) or a board of arbitrators, met by the agreement of the parties to decide some controversy between them, it will yet be necessary that it should appear that Thompson's certificate of the defendant's conduct was a proper exhibit, on such trial, before it can be considered as an authentic matter of a public nature. It seems to have been a certificate or statement of some fact relating to the defendant, made by an individual not on oath, and purely voluntarily: is such a certificate competent evidence before any tribunal? Certainly not. It is of no more legal authenticity, than a blank paper; and unless we were to say that, to write the name of another person, is, in itself, a forgery, indictable and punishable, we cannot hold that the writing of Thompson's name to such a paper can be so considered. It is not conceded that forgery can be committed in any case which does not prejudice another's right; and as to Thompson's rights, the forging of such certificate, purporting to be his, could no other way prejudice them, than by exposing him to ridicule; and I am not altogether clear, but what it ought to be considered as a charitable supposition, as it respects him, that his name was affixed to an uncalled for and officious certificate, concerning the conduct of his neighbors, without his knowledge. The constitution of the state cannot be considered as having changed the law of slander—so far indeed as established principles have been innovated upon by the Supreme Court, and no farther, are we disposed to depart from those principles. The judgment must, therefore, be arrested. [*See appendix A.*]